May it please the Court, Thomas Hester for Appellant Richard Bahr. Last term, in Loeffler v. Cooper, the Supreme Court reiterated that the Constitution rights of criminal defendants are granted to the innocent and the guilty alike, and it was quoting Stone v. Powell. The Framers made a value judgment that certain conduct so offended their values that certain provisions of the Constitution really are geared toward protecting the guilty. Specifically, here, no person shall be compelled in any criminal prosecution to be a witness against himself. Now, in Antelope, this Court stated that that Fifth Amendment self-incrimination clause was designed to affect the practical and beneficent purpose of preventing inquisitorial interrogation. This is an important Fifth Amendment case, but it's simple, because the dispositive facts and the law are each clear. To establish a Fifth Amendment violation, there must be compulsion and incrimination. In terms of the law on that, the Antelope case that I alluded to and cited extensively and McKeown v. Lyle from the Supreme Court established the principles. In terms of our record, Probation Officer Justison's letter in the excerpt of record at 203-204 establishes very clearly that Mr. Barr has repeatedly told, you must pass a full-disclosure polygraph revealing all of the victims of your past sexual abuse, or you will be found in violation and you will be sent to prison, and when you get out, we'll repeat this drill until you do it. Now, the government stresses the record. Does the record indicate what would happen to Mr. Barr had he taken the Fifth at the time of any polygraph? There is nothing in the record about that, Your Honor. Isn't that the dispositive question? In other words, the question is whether or not his assertion of his Fifth Amendment right not to speak, if you will, would carry with it a penalty. If it would, then it seems to me we're in antelope to use a bad pun, an antelope territory. If it would not, we're probably in Murphy territory. So what do we conclude that it would? Well, I think the record is clear that he was told, you absolutely must do this, and that he expressed reservations both to Probation Officer Justison and to his treatment provider, Melanie Kelly, whose letter is in the record at Excerpt 206 and 207. That he didn't want to disclose. But the law is clear in this situation, this penalty situation, where if you don't disclose, you are going to be jailed and you don't have to invoke. That's why I guess I'm asking an imprecise question, so let me be more precise. It's one thing to say that if you speak to us and you lie, there will be consequences. There's nothing to say there will be consequences if you don't speak to us. And so I'm trying to – it's the first one that gives rise to the Fifth Amendment problem, it seems to me. And so I'm trying to figure out what the record discloses with respect to that penalty. The record doesn't speak to that in any way at any point. However, the record is clear that he didn't want to do this. He goes through this cycle of giving a little more, a little more, fails a polygraph. You're making progress. Try again. Fails again. We're going to give you another chance. You have to disclose all of your past victims. And at that point, he does. The record's clear that he's told if you do not do this, you will be in violation, you will be revoked, you will be sent to prison. Upon your release, you will have these same conditions, and we will repeat this drill until you do. Now, on the legal standpoint, in terms of responding, I think that the cases such as, say, Chau in this circuit, which – and really Minnesota v. Murphy, that established the penalty situation, the fact that when you're in this position where if you don't invoke, you're going, show that he didn't have to invoke. And I think that it's contrary to the law in those cases, as well as State v. Gater, which deals with our – really our kind of factual situation where someone is taking the force of the law. No, I'm not suggesting that he has to invoke. I'm trying to figure out whether the penalty in this case would be from invoking or from testifying or from lying during the polygraph. And I think we'll – Well, he didn't invoke, so I guess that's a theoretical question. He wasn't penalized for invoking because he did not. He ended up disclosing because he was told he was compelled. I mean, we haven't invoked. That's the point I would ask. Let me ask you one other quick question on this one, because I know your time is limited. The district judge gave a sentence near the low range of the guidelines. She did. And there was no enhancement involved in this case. So can you – how do – is it your burden to demonstrate prejudice from this? And how can we conclude there was prejudice? Well, I mean, she did give that. One of the big issues in play in terms of the guidelines is there's a five-level enhancement. Right. Which she did not give. No, she did give that. But not on the basis of this testimony. Well, I believe she gave it on both. But it – well, I will concede it could be established on this other evidence, which I'll allude to, because the other evidence upon which it could have been based was the statutory rape was predicated on sex with – consensual sex with another teenager when he was 19. Well, but before you go on, I thought the record – I read the hearing, the two-sentencing hearing transcripts, and I thought at the beginning of that, both sides stipulated that the government was not seeking an enhancement on the basis of your client's answers to the polygraph questions, but rather thought the judge should take those into account in where in the guidelines she imposed the sentence. Am I – did I read that wrong? Well, I'll concede that I agreed that under the pure application of guidelines, it can get there through the statutory rape piece. My point is this. That was an actual eight-year enhancement in the sentence for those guidelines. And in terms of a variance under 3553, that was unreasonable where the pattern of sexual abuse was having consensual sex with a girlfriend who is a much younger teen than he. Well, but then on that point, and this is the reason I'm – and I think probably this is an issue we'd leave for the district judge if we thought your basic position is correct, but your client's mother testified, and testified to some – not everything that he said in his – in his polygraph examination, but some things that were difficult and, it seems to me, would have allowed the judge not to impose the bias that he had to the bottom end of the guideline. Could you address the question of whether or not the admission of these statements in the polygraph was harmless error? It's not harmless. And if you look at the supplemental excerpt of record, the interseal, the findings – the statement of reasons from the district court, which is at page 1 and page 2 there. If you look at page 71 of the excerpt of record, which is the actual sentencing transcript, the judge says, I think the government's correct to remind the court to consider the defendant as a man and as a whole in his entire background experience. Certainly, I cannot sentence him for uncharged conduct, and I don't, but I'm required to consider his past behaviors in terms of trying to predict what will be enough time to protect the community. Right. But if the mother's – if the mother's – and I know you can test the introduction of the mother's testimony, but assume for a moment that the mother's testimony is properly introduced. Can't – if the judge can rely on that, what difference does it make that he also said, I did it? Well, I think it's pretty clear the judge doesn't rely on it. I mean, she does comment on it. She discusses it in responding to the motion that's filed. She talks about one sort of hearsay allegation. There's really very little of the 18 instances of sexually abusing children that are disclosed in the full disclosure polygraph which the mother speaks to. There's also some significant credibility issues with the mother, but that is something that I anticipate taking up with the district court at a resentencing. I think another place where the mother's testimony is a little bit interesting because she's so clearly motivated to send her son away is in terms of the incrimination aspect, because if you look at our record, again, not only probation officer and justice's report, but the polygraph results at page 194 to 196 of our excerpt of record, although certain names are redacted from the discovery, there are extensive descriptions. For instance, I grew up with him in Lyle, Washington, another victim, girlfriend, sister who is a redacted name, someone's aunt. So, I mean, we have a good deal of specificity in the notion that simply because these crimes weren't prosecuted, the statute of limitations had not run, and they certainly could have been, and the mother certainly would have helped in finding those victims if she'd been asked. Nobody did pursue that. But as this Court said in Antelope, this is not to say, however, that the prosecutorial sword must actually strike or be poised to strike. And, I mean, there's clearly incrimination here. So I believe that we get there, and that's another aspect of the mother's piece that I think is significant. I really do believe it is a simple case. I want to just comment briefly on the government's argument that under 18 U.S.C. 3661, the Court could have considered anything and should have considered anything. Again, the Framers trumped that when they enacted the Fifth Amendment. And the government relies on exclusionary rule cases, Fourth Amendment cases, the exclusionary rule is not a constitutional rule. It's not an individual right. It's a prophylactic rule, and that's why I kind of wanted to start with something that discussed Stone v. Powell, because that was made clear then. In the Harrington case that I submitted yesterday in a 28J letter, this Court, and I apologize for not finding that until recently, yesterday, in fact, a Federal sentencing judge looked at something that was disclosed in a State sentencing hearing, it was mandated, it was compelled, and this Court reversed that for the Fifth Amendment violation in a situation I think deals with that. It's also the exclusionary rule piece that the government relies on in all of their cases. If there aren't any more questions, I guess I would just circle back to where I started with Lafler and say as the Lord's. Kennedy, I want to save a minute of the time you no longer have for rebuttal. I shall save that. May it please the Court. Gary Sussman for the United States. Richard Barr was required to participate in a sex offender treatment program as a result of his Oregon State conviction for third-degree rape, but he was not compelled to make incriminating statements in violation of the Fifth Amendment. He was required to take and pass a polygraph examination as part of his sex offender treatment. And I know it was an Oregon State conviction, but it seems to me pretty self-evident that if he failed to take the polygraphs, his probation would have been revoked. Isn't that pretty self-evident? The probation officer told him that continued failures might eventually result in a sanction, but they allow the process to continue for quite some time so long as the treatment provider believes they're continuing to make progress. I guess my question is, he didn't have a choice, but once he agreed to the probation conditions, there was a sanction that would have been imposed had he not taken the polygraphs, correct? Well, if he utterly refused to take a polygraph examination, he was going to be revoked. But had he said, I assert my Fifth Amendment right against self-incrimination, presumably the probation officer would have said, that's your right, but you've Well, that would not have been valid under the Fifth Amendment under this Court's decision in Antelope. But that's not the situation that arose, because he took the polygraph examination three times without ever asserting his Fifth Amendment rights. But if he had – if his alternative to asserting them was to go to jail, then whether or not – whether or not Antelope prohibits that is a separate issue, but aren't we squarely in Fifth Amendment territory then? If that's what had happened, if the probation officer had told him, you must take the polygraph, if you don't, you will go to jail, then, yes, that's squarely within Antelope territory. Isn't that a fair reading of this record? I think the record is somewhat ambiguous. It's not as clear as it could be, but the probation officer told him, look, you have to participate in sex offender treatment, you have to make disclosures, but there are many ways to disclose that will not necessarily result in your prosecution. You need to discuss that with your treatment provider. And the treatment provider told him that in her 11 years of providing sex offender treatment, she had never seen anyone prosecuted for making disclosures during the course of treatment, not one person. Well, but I also read the record as the probation officer saying, look, if you admit to a specific crime and you let us know who it was, I'm going to go out to talk to the prosecutor and see if we prosecute you for it. It was sort of these one of these wink and nods. When you admit to these, don't give us enough information to prosecute you. But if you do, you might get prosecuted. Isn't that what he said? That's one way to spin it. What I think he said was – I'm trying not to spin. I'm trying to recall. It's a little bit nebulous, so it's subject to some interpretation. But what she said, as I interpret it, was that if you disclose and the victims are identifiable, then we are going to have to talk to the district attorney to see whether or not prosecution will occur. But there are many ways to disclose that will not necessarily result in your prosecution. Talk to your treatment provider about it. And he did disclose, and he passed the polygraph, and he suffered no sanction as a result. He was never charged, he was never prosecuted, he was never, to the government's knowledge, ever even investigated. He suffered no violation or sanction for his post-prison supervision. The disclosures he made were not the basis of this Federal prosecution or any prosecution. Let me try again, and I don't want to dominate this, but it's a point that's of interest to me. I asked your opponent the same question. The issue is not whether or not Mr. Barr suffered a consequence from making the disclosures. Isn't the issue whether or not those disclosures, whether he would have suffered a consequence from not making the disclosures? I agree with you. He suffered no State consequence from making the disclosures. But for Fifth Amendment purposes, isn't the relevant question whether or not, in effect, he was compelled to make these because there would have been a penalty had he not done so? That's one of two relevant inquiries. The relevant inquiries are, number one, were they incriminating? And I think that goes to, was there a sanction and could he have been prosecuted? Well, they were plainly incriminating for purposes of sentence. You asked the judge to consider them. Not in the case in which he made those statements. He made the statements in connection with a case that ended years earlier that he'd already been sentenced on, that he was on post-prison supervision for, and he suffered no consequence. The sentencing process of the charge for which he was being sentenced, is that part of a criminal proceeding? Is the sentencing a part of a criminal proceeding? Oh, clearly it is, yes. Did these expressions of his past conduct that he was compelled to make in the polygraph, did they have anything to do with the information that went to the sentencing judge about what kind of a person he was and what kind of a sentence he should have? They went to the sentencing judge, but it is not at all clear to what extent the sentencing judge in our case relied upon them, because at this hearing at which she imposed the sentence, she made no reference to those admissions at all. I read the sentencing transcript, and she did not make any reference, but she did have the information about his lifetime of sexual abuse of children. And she had that from several different sources. And it didn't help him any in the sentencing process. Probably not. This was a pretty careful district judge as I read this record. I mean, she said, I want to be clear what you want me to do with this, and I want to be clear you don't want me to use it for this, but then you want me to use it for that, because if you don't want me to use it for sentencing purposes, no sense facing these difficult questions and having me turn out an order, and you've said or the government said, no, no, we want you to use it. And she said, okay, well, then I'll go through the process and figure out whether I can. I know she didn't make any specific reference to it, but given that procedural history, don't we have to assume that she made some use of it? I don't think you can. I don't think you should, because whether or not – what she was asked to do was to rule on Mr. Hester's motion to strike that information from the pre-sentence report, essentially to suppress it at the time of the sentence. Yeah, but going back to the colloquy that Judge Goodwin's talking about, she says at the beginning of the colloquy, look, this is a tough question for me, and it's going to require a lot of work, and I can't rule today. So I want to know, government, from you two things. Do you want me to use this for enhancements? And the government said, no, Your Honor, we don't. Do you want me to take it into consideration for sentencing? And the government said, yes. And she said, well, if that's the case, then I guess I've got to go figure out whether I can suppress it or not. And she then comes out with a ruling. I agree she never refers to it specifically in the sentencing proceeding, but given that history and given how careful this judge was, don't we have to assume that she was going to use it to at least for something? I don't think you can assume that. I think what she needs to do is look to the record of the case. The fact that she would not grant the motion to suppress it, the fact that she did not strike it from the pre-sentence report, is one issue. But whether she actually took it into account in sentencing is a different issue. And that's where you have to look to the record, and there is just nothing in the record of the sentencing hearing itself that suggests that she took that into account or she based her sentence on that. Now, she did talk at length, because she's very meticulous, this particular judge, and very detailed in her findings, she talked at length about the things she did consider. She considered the 3553a factors, and she went through those factors. But then she said, I cannot sentence him based on uncharged conduct, and I don't. She talked about the mother's testimony, which, with all due respect to Mr. Hester, the district court found to be credible, compelling, and quite damning. Those were the district court's words. She considered things that the mother had talked about that had nothing whatsoever to do with the full disclosure polygraph examination, such as an instance dating back to when the defendant was 5 years old, the very first time he was involved in the sexual abuse of a child, when he stuck his hands down some little girl's She described instances in which he took little children out into the woods, had them undress and perform oral sex on one another. She described many instances in which he became violent with and toward her, threatening to kill her with a knife, setting fire to her belongings, placing a bomb under her bed, repeatedly stabbing her bedroom door while she and her children were barricaded inside, fearing for their safety. None of those things had anything to do with his sex offender treatment or the statements he made in connection with the polygraph examination, but they speak volumes to him as a man. No. And I understand your point. I'm just trying to figure out, is this a harmless error argument that she surely would have reached the same sentence in the absence of the – in the absence of polygraph information? Because these are all also uncharged things that she did take into account, and I think  So I'm just trying to figure out, is this a harmless error argument, and if so, I don't think properly so. Are you arguing that it was harmless error if in fact it was error to allow the polygraph information to be used? Well, of course, it's our position that there was no error at all. I understand, but assume there was. But yes, yes and no. It's harmless error in that much of the same information came out through the testimony of the mother. And I think that's the reason why, in the first instance, he had things he wanted to get off his chest because he needed to seek her forgiveness and God's forgiveness because he felt bad about the things he needed to do. And I might add, he sought her out even before he began his sex offender treatment. According to the mother's testimony, the first instance in which he confessed to her having sexually abused his own daughter occurred within the first week of his release from prison. Now, according to the pre-sentence report, he was released on July 10th. He met with his probation officer the first time on July 15th. He underwent a sex offender evaluation before treatment began on the 22nd of July. By then, he'd already confessed to his mother. The first polygraph didn't happen until months later in September. Then there was another polygraph in January. I think you've answered my question. It's not a very appealing position, though. I'm sorry, Your Honor. I said it is not a very appealing position for the government to fight so hard to get the judge to consider this when she says, I don't really want to do all this work if it's not necessary, and the government says it's very important, we want you to consider this, and you win, and you get the evidence, and then you say, well, she didn't say she really relied on it. That's not an attractive position, I would say. We wanted her to take that into consideration because we believed that it was important for the district judge to view Richard Barr as a whole, not little bits and pieces here and there. But you wanted her to consider this when she was imposing her sentence. We wanted her to consider him as a whole in finding a sentence. And that included this evidence. Which would have included this evidence, but whether she actually took our advice and did it or not is not clear from the record. That's what we can't do. That's what you shouldn't be speculating on. You shouldn't say, well, she must have, because she went to great lengths to spell out what she did consider, and those admissions just aren't there. So you want us to say she didn't consider it, the record shows, because she mentioned other things and didn't mention this, that she didn't consider this. What I'm saying is, is that you can't speculate as to what may have been going on in the judge's mind when she imposed the sentence. You have to go on what's in the record, and it's just not there. Well, which who should have the burden when you insist on presenting this evidence to her, and she says, okay, you have a right to do that, present the evidence. She doesn't say I won't consider it. You know it's before, you know you've asked her to consider it. She doesn't say when she imposes it whether she did. Whose burden is it? When it was an error, let's say, to have the evidence considered. And there's no – she doesn't say when she lists her reasons. She doesn't say whether she considered it or not. Whose burden would that be? Well, it seems to me to the extent that the defendant is raising a claim of sentencing error, that a burden would be on the defendant to establish the sentencing error. To the extent the government is claiming it's harmless error because it wasn't considered, then it seems to me that it would be the government's burden to establish harmless error. Okay. I hope I've done that. I think you're about to sit down, sir. Thank you, Your Honor. Looking back to what Judge Brown did say, I mean, she issued an extensive opinion. She knew this was the issue in the case, that it was going to have life beyond her sentencing. And she clearly didn't in any of the motion in the sentencing materials say, I'm not looking at this. And as I look – as I directed the Court to page 71, just looking a little beyond what I quoted before, she says there, you know, talking about these past behaviors and the uncharged conduct, you know, I suspect these behaviors are long ingrained. In terms of discussion about what the mother and other pieces, I believe that the piece about the 5-year-old was the only piece that was really independent. The mother's testimony about him barricading her in the bedroom and threatening her with a knife was supposedly when he was 3 years old, the first thing when he was 5. In terms of the notion that, you know, he could – he could disclose these things without exposing himself, I mean, it's clear from the cited records in the polygraph that there were disclosures of victims, sometimes names, specifics about places and times. The fact that the government didn't aggressively investigate that doesn't change things. How do you disclose every victim of past sexual abuse when they're all within the statute of limitations without exposing yourself? In this case, the other piece I'd like to leave you with is Mr. Barr pled guilty to possession of child pornography, and he was sentenced to the statutory maximum after the judge heard all of these horrific things that he had to disclose for his full disclosure polygraph. And from the mother's testimony and Mr. Barr's affidavit, with the exception of that one piece that she says was disclosed, which, as it turns out, is not in the statute, suggests she's not credible. With the exception of that one piece – I'm sorry, I have lost my train of thought here as I'm finishing up. That can be worse. I will sit down, but I do want to stress that. Thank you, counsel. Thank you. All right. The court will take a brief recess before the next case.
judges: Goodwin, Reinhardt, Hurwitz